CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

AMANI S. FLOYD (CABN 301506)
Assistant United States Attorney

60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5596
FAX: (408) 535-5066
Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EBER NAHUM ESTRADA-HERNANDEZ,<br>a/k/a "Miguel Ramos",<br>a/k/a "Eber Nahum Ramos-Hernandez",<br><br>Defendant. | CASE NO. CR-25-313-BLF-1<br><br>**THE UNITED STATES' SENTENCING MEMO** |

## I. INTRODUCTION

On October 2, 2025, Defendant Eber Nahum Ramos-Hernandez[1] was charged via indictment with violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(vi) – Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of Fentanyl (Count One); 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iv) – Distribution of 100 Grams or More of a Mixture or Substance Containing a Fentanyl Analogue (Count

[1] At the COP hearing, the defendant stated that Eber Nahum Ramos-Hernandez is his true name. Therefore, the government will use that name in its filing.

Two), and 8 U.S.C. §§ 1326(a) and (b)(1) – Illegal Reentry Following Removal (Count Four). Dkt. 29.

On July 21, 2026, Ramos-Hernandez pled guilty to Counts Two and Four of the Indictment pursuant to a plea agreement. Dkt. 67. Ramos-Hernandez is set for sentencing before the Honorable Beth Labson Freeman on October 6, 2026.

As discussed in more detail below, the government agrees with U.S. Probation that Ramos-Hernandez's Guidelines range is 87 - 108 months' imprisonment. However, while Probation recommends a sentence of 66 months' imprisonment, the government believes that a more serious punishment is warranted in this case considering the type of drugs at issue in this case, Ramos-Hernandez's criminal history, the need for the sentence to reflect the seriousness of Ramos-Hernandez's crimes, the need to promote respect for the law, the need to deter others from engaging in similar conduct, and the need to protect the public from further crimes from Ramos-Hernandez. Therefore, the government recommends a Guidelines sentence of 87 months' imprisonment, followed by a term of supervised release, for Ramos-Hernandez's unlawful conduct.

## II. BACKGROUND

### A. Offense Conduct

Ramos-Hernandez came to the attention of federal law enforcement during its investigation of Ramos-Hernandez's co-defendant, Juan Manuel Olvera, who ran a Santa Cruz, California-based drug trafficking organization ("DTO") that distributed large quantities of fentanyl, methamphetamine, cocaine, and heroin in the Santa Cruz and Watsonville, California areas. *See* Presentence Investigation Report ("PSR") ¶ 9. Ramos-Hernandez, who lived in Oakland, California, was one of the fentanyl suppliers for the DTO. *Id.*

Ramos-Hernandez began working with Olvera in November 2024, after Olvera's prior fentanyl supplier was arrested by federal law enforcement. *Id.* ¶¶ 9, 10. Between December 2024 and February 2025, Ramos-Hernandez and Olvera met regularly in Oakland, California for fentanyl deals. *Id.* ¶ 10. Law enforcement is aware of at least thirteen deals between the two:

| | Date | Amount of Fentanyl / *p*-Fluorofentanyl |
|---|---|---|
| 1. | 12/22/2024 | 283.5 grams |
| 2. | 12/26/2024 | 283.5 grams |
| 3. | 12/29/2024 | 283.5 grams |
| 4. | 01/02/2025 | 283.5 grams |
| 5. | 01/05/2025 | 283.5 grams |
| 6. | 01/09/2025 | 283.5 grams |
| 7. | 01/13/2025 | 283.5 grams |
| 8. | 01/17/2025 | 326 grams |
| 9. | 01/20/2025 | 340.2 grams |
| 10. | 01/23/2025 | 340.2 grams |
| 11. | 01/27/2025 | 283.5 grams |
| 12. | 02/01/2025 | 283.5 grams |
| 13. | 02/05/2025 | 349.4 grams ± 0.2 g (net) *p*-Fluorofentanyl<br>10.1 grams ± 1.3 (pure) fentanyl |

During each of these known deals, Ramos-Hernandez sold Olvera between 283.5 grams (10 oz.) and 340.2 grams (12 oz.) of fentanyl. *Id.* All of these deals were monitored by law enforcement, either electronically or physically. *See id.* ¶¶ 10-29. During the last deal, on February 5, 2025, the fentanyl sold by Ramos-Hernandez to Olvera was seized by law enforcement and was later confirmed to be not only fentanyl, but also *p*-Fluorofentanyl (also known as *para*-Fluorofentanyl), which is an incredibly dangerous and deadly fentanyl analogue. *Id.* ¶ 28

What is more, during the time that Ramos-Hernandez was supplying fentanyl to Olvera, he was in the United States unlawfully. *Id.* ¶ 28. In fact, he had been previously removed from the United States eight times, with his last removal being in December 2018. *Id.* ¶¶ 30, 31. Ramos-Hernandez did not have permission to be inside of the United States, *id.* ¶ 31, and certainly did not have permission to commit crimes while he was here.

**B. Criminal History**

Ramos-Hernandez has a history of drug trafficking that dates back nearly twenty-five years. *See id.* ¶¶ 69-73. On July 1, 2002, Ramos-Hernandez was arrested by the San Francisco Police Department ("SFPD") for Possession/Purchase of Cocaine Base for Sale in violation of California Health & Safety Code § 11351.5(a) and Obstruction/Resisting a Public Officer in violation of California Penal Code § 148(a). *Id.* ¶ 71. While charges were dismissed against Ramos-Hernandez, several years later, on

April 10, 2008, Ramos-Hernandez was once again arrested by the SFPD for selling cocaine base—this time to an undercover officer. *Id.* ¶ 64. Ramos-Hernandez was ultimately convicted of Transporting or Selling a Controlled Substance in violation of California Health & Safety Code § 11352(a), which is a felony offense. *Id.*

Then, on July 30, 2024, Ramos-Hernandez was arrested by the SFPD for the third time. *Id.* ¶ 69. This time, he was caught selling fentanyl. *Id.* In addition to approximately 112.9 gross grams of fentanyl, Ramos-Hernandez also had heroin, methamphetamine, suspected Alprazolam, cocaine base, cocaine, and a loaded firearm on him. *Id.* He was ultimately charged with Felon in Possession of a Firearm, in violation of California Penal Code § 29800(a)(1); Carrying a Concealed Weapon, in violation of California Penal Code § 25400(a)(2); Carrying a Loaded Firearm in Public, in violation of California Penal Code § 25850(a); Possession of a Controlled Substance While Armed, in violation of California Health & Safety Code § 11370.1(a); Possession/Purchase of a Narcotic/Controlled Substance for Sale, in violation of California Health & Safety Code § 11351; Possession of a Designated Controlled Substance for Sale, in violation of California Health & Safety Code § 11375(b)(1); and Possession of a Controlled Substance for Sale, in violation of California Health & Safety Code § 11378. *Id.* This case is still unresolved. *See id.* ¶ 69.

Then, undeterred by his prior arrests, jail time, eight removals from the country (including two misdemeanor 8 U.S.C. § 1325 convictions), and pending state firearm and drug trafficking charges, Ramos-Hernandez committed the instant offenses.

### C. Applicable Guidelines Calculation

The government concurs with Probation's calculation of Ramos-Hernandez's Guidelines range—i.e., a Total Offense Level of 29 and Criminal History Category I, yielding an advisory Guidelines range of 87 - 108 months' imprisonment.[2]

---

[2] The government submits that Probation is correct that as it relates to Count Four, Ramos-Hernandez (i) should not receive a two-level increase pursuant to U.S.S.G. § 2L1.2(b)(l)(B) because his first misdemeanor conviction under 8 U.S.C. § 1325 is from more than ten years prior to the commencement of the instant immigration offense, and (ii) should not receive a four-level increase

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991-93.

Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider the following factors applicable to this case, among others:

(1) the nature and circumstances of the offenses and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to protect the public from further crimes of the defendant.

### B. A Sentence of 87 Months Is Sufficient but Not Greater than Necessary to Achieve the Goals of Section § 3553(a)

#### i. The Nature and Circumstances of the Offenses

There are several factors that make Ramos-Hernandez's drug trafficking offenses particularly aggravating. First, he was selling fentanyl. As the Court is aware, fentanyl is a potent synthetic opioid that is incredibly dangerous and deadly. Ramos-Hernandez was selling this drug—which is 100x more potent than morphine, 50x more potent than heroin, and which can kill with a dose as small as a few grains

---

pursuant to U.S.S.G. § 2L1.2(b)(3)(D) because his felony conviction under California Health & Safety Code § 11352(a) is from more than ten years prior to the commencement of the instant immigration offense. *See* PSR ¶ 5. However, due to the procedure for determining the offense level on multiple counts, these changes do not affect the Total Offense Level contemplated and calculated by the parties. *Compare* PSR ¶¶ 41-60 *with* Plea Agreement ¶ 7.

of salt—on a regular basis and in large quantities.

Furthermore, he also was selling fentanyl that was cut with *p*-Fluorofentanyl, which is believed to be even more potent than regular fentanyl. This means that every time that Ramos-Hernandez sold fentanyl / *p*-Fluorofentanyl to Olvera (and anyone else for that matter), he was directly contributing to the opioid crisis in this country and risking lives. Just the amount of fentanyl / *p*-Fluorofentanyl sold to Olvera on February 5, 2025 was enough fentanyl / *p*-Fluorofentanyl to kill an untold number of people:



*Fentanyl / p-Fluorofentanyl sold to Olvera on February 5, 2025*

**ii. The History and Characteristics of the Defendant**

The evidence in this case and Ramos-Hernandez's criminal history show that Ramos-Hernandez knew that what he was doing was illegal and that he knew that he was not supposed to be in the United States. Yet, he decided to return to the United States, multiple times, and engage in drug trafficking. While one can understand his desire to come to the United States to find work and support his family, he did so in a way that not only broke the law but also caused harm to communities and other families. Wanting to support one's family is not an excuse for selling deadly drugs.

**iii. The Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, Promote Respect for the Law, and Provide Just Punishment for the Offenses**

Ramos-Hernandez engaged in incredibly dangerous conduct and has a long history of drug trafficking and not respecting the immigration laws of this country. As a result, he should receive a meaningful sentence that reflects the seriousness of his offenses, promotes respect for the law, and provides just punishment for his crimes. An 87-month custodial sentence would be sufficient, but not

greater than necessary, to achieve these goals.

**iv. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct**

Drug trafficking is an age-old problem that has only become worse with the emergence of synthetic opioids like fentanyl. A substantial prison sentence in this case would send a message to other drug dealers—especially those who sell drugs cut with a fentanyl analogue—that their conduct will result in significant prison time. It would also send a message to the public that the courts and the government take this type of conduct very seriously—especially when someone has a history of similar conduct that goes undeterred.

**v. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

As discussed above, Ramos-Hernandez has a long history of drug trafficking and immigration violations and was undeterred by prior arrests, probation terms, jail time, removals, and pending state charges. An 87-month custodial sentence will prevent him from engaging in further drug trafficking and dangerous weapon possession and will provide him with time for rehabilitation through programming while incarcerated.

## IV. CONCLUSION

With full consideration of all the sentencing factors set forth in Section 3553(a), the United States respectfully requests that the Court impose a sentence of 87 months of imprisonment, five years of supervised release, a $100 special assessment per Count, and forfeiture of the items listed in the PSR and Plea Agreement.

DATED: September 29, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
AMANI S. FLOYD
Assistant United States Attorney